IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Case No. 04-cv-00148-MSK-PAC

BARBARA A. FREEMAN,

      Plaintiff,

v.

SGT. KNIGHT, In Charge of Unit 6 D Pod,
C/O DINET, Officer in Unit 6 D Pod, and
ASSOCIATE WARDEN NOBEL WALLACE, DWCF,

      Defendants.

---

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
MOTIONS TO DISMISS**

---

    **THIS MATTER** comes before the Court pursuant to Defendants Knight and Dinet's

Motion to Dismiss **(# 30)**, Defendant Wallace's Motion to Dismiss **(# 32)**, the Plaintiff's

consolidated responses to the motions **(# 46)**, the Defendants' consolidated reply **(# 48)**, and the

Plaintiff's consolidated sur-reply **(# 49)**.[1]

### BACKGROUND

---

[1]The Plaintiff did not seek leave to file a sur-reply.  Such filings are not permitted by the
Court's rules.  *See* D.C. Colo. L. Civ. R. 7.1(C) (making no provision for sur-replies).
Nevertheless, given the Plaintiff's *pro se* status and the lack of objection by the Defendants, the
Court will consider her sur-reply for purposes of the pending motions.  The Court will not,
however, consider any future sur-replies filed without leave in this action.

This action was initially commenced by several inmates at the Colorado Department of Corrections' Women's Facility in Denver, Colorado, in a Complaint (**# 3**) naming the Department of Corrections and Warden Joan Shoemaker as the only Defendants.  The inmates, all of whom were disabled in some capacity, alleged that the administration of the facility constituted discrimination against them on the basis of their disabilities.  For example, the inmates contended that, by housing numerous wheelchair-using inmates on the third floor of a facility with only a single elevator capable of accommodating only four wheelchairs at a time, the Defendants were exposing the inmates to undue risk should a fire occur.  Included in the Complaint were handwritten statements by the inmates, including a statement by the Plaintiff that related her concerns about the lack of wheelchair accessibility on the third floor of the facility (although the Plaintiff does not claim to actually use a wheelchair) and recited a number of maladies the Plaintiff suffers from, including vision impairments from glaucoma resulting in partial blindness, a need for surgery on her knee and hip.

Shortly after filing the Complaint, the Plaintiff filed a Motion for Order of Preliminary Injunction (**# 12**), alleging that Corrections Officers Alvarado and Dinet were harassing her by conducting excessive cell shakedowns, seizing the Plaintiff's canteen and personal property without authorization, and that one of the Corrections Officers had planted a razor blade in the Plaintiff's cell to frame her for a disciplinary infraction.  On April 21, 2004, United States Magistrate Judge O. Edward Schlatter issued an Order (**# 16**), in which he observed that the

Complaint as pled was insufficient, and directed the Plaintiffs to file an Amended Complaint. On June 29, 2004, the Plaintiff and another inmate filed an Amended Complaint (# 21), naming numerous Corrections Officers involved with their housing unit, as well as several other officials of the facility. The Amended Complaint iterated the disability discrimination allegations and related an extended discussion of the Plaintiff's incident involving the razor blade and the consequences that followed that disciplinary infraction, as well as new assertions involving the use of guard dogs in the facility, increased medical co-payments, and a litany of other concerns.

On November 19, 2004, Magistrate Judge Schlatter entered an Order (# 24), finding that the Amended Complaint did not separately state individual claims, and he interpreted the narrative in the Amended Complaint to raise 11 distinct claims. Of those 11 claims, Judge Schlatter dismissed all except: (i) a claim against Defendant Wallace, alleging that he limited the number of grievances the Plaintiff could file in retaliation for her complaints against prison staff; and (ii) that Defendants Dinet and Knight confiscated the Plaintiff's medical supplies during a shakedown, causing the Plaintiff to endure physical pain.

The Defendants then filed the instant motions to dismiss. Defendants Knight and Dinet contend that: (i) the Plaintiff's allegations that he medical items were confiscated does not allege an Eighth Amendment violation, as the conduct alleged was not deliberately indifferent to the Plaintiff's medical needs; (ii) the Plaintiff failed to exhaust her administrative remedies as required by 42 U.S.C. § 1997e(a); and (iii) they are entitled to qualified immunity. Defendant Wallace

contends that: (i) the administration of a grievance procedure does not arise to a protected right for purposes of a Due Process claim; (ii) the Plaintiff's allegations of retaliatory intent are conclusory; (iii) the Plaintiff failed to exhaust her administrative remedies; and (iv) Defendant Wallace is entitled to qualified immunity.

## JURISDICTION

The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

## ANALYSIS

### A.  Standard of review

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-plead allegations in the Complaint as true and view those allegations in the light most favorable to the nonmoving party.  *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001), *quoting Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).  The Complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Benefield v. McDowall,* 241 F.3d 1267, 1270 (10th Cir. 2001); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).  The Court must limit its review to the four

corners of the Complaint, but may also consider documents attached to the Complaint as exhibits, *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001), as well as unattached documents which are referred to in the Complaint and central to the plaintiff's claim, so long as the authenticity of such documents is undisputed. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

The Court construes the Plaintiff's *pro se* pleadings liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991). In other words, if the Court if can reasonably read the pleadings to state a valid claim on which the Plaintiff could prevail, it should do so despite the Plaintiff's failure to cite proper legal authority, her confusion of various legal theories, her poor syntax and sentence construction, or her unfamiliarity with pleading requirements. *Hall*, 935 F.2d at 1110. However, the requirement that the Court read the Plaintiff's pleadings broadly does not relieve the Plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based. *Id.* The Court may, at any time and of its own accord, dismiss any action that is frivolous or which fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915(e)(2)(A) and (B); Fed. R. Civ. P. 12(b)(6); *Hall*, 935 F.2d at 1108-1110.

**B.  Failure to Exhaust**

The Court will address the substantive issues in an order different than the parties have presented them. As a threshold issue, the Defendants contend that the Plaintiff has failed to

exhaust her administrative remedies by not pursuing the Colorado Department of Corrections'

grievance procedure to its conclusion regarding each claim.  Pursuant to 42 U.S.C. § 1997e(a), an

inmate must fully exhaust available administrative remedies before commencing suit in federal

court.  The exhaustion requirement applies to all suits regarding prison life, whether they

challenge general circumstances or particular episodes.  *Porter v. Nussle*, 534 U.S. 516, 532

(2002).  Exhaustion is required even though the grievance procedure does not make available all of

the remedies– such as monetary damages– the inmate desires.  *Booth v. Churner*, 532 U.S. 731,

741 (2001).  The fact that an inmate might perceive the administrative procedure as futile is

unavailing; futility is not an exception to the exhaustion requirement.  *Id.* at n 6; *see also Jernigan*

*v. Stuchell*, 304 F.3d 1030, 1032-33 (10th Cir.2002).  An inmate that begins the administrative

procedure but does not complete it has not adequately exhausted it.  *Jernigan*, 304 F.3d at 1032.

The burden of showing exhaustion is on the Plaintiff, to be established by either attaching copies

of documents showing complete exhaustion, or by identifying with specificity the procedures

invoked and their outcome.  *Steele v. Federal Bureau of Prisons*, 355 F.3d 1204, 1209-10 (10th

Cir. 2003).  In this Circuit, the presence of an unexhausted claim required dismissal of the entire

action, not just the defective claim. *Ross v. County of Bernalillo*, 365 F.3d 1181, 1189-92 (10th

Cir. 2004).

Here, the Plaintiff makes only conclusory allegations in the Amended Complaint that she

has filed grievances with respect to certain claims or certain Defendants, but does not attach any

such grievances or identify the various grievances with any specificity. Ordinarily, this would be a sufficient basis to dismiss the Plaintiff's Amended Complaint as unexhausted pursuant to *Steele* and *Ross, supra.* However, the Plaintiff also alleges that her ability to access the grievance procedure has been intentionally impeded by Defendant Wallace, who denies her the ability to file more than one grievance per month. Arguably, a grievance procedure that requires grievances to be filed on specified forms is not "available" to an inmate who is denied access to the necessary forms. *See e.g. Aceves v. Swanson*, 75 Fed. Appx. 295, 296 (5th Cir. 2003) (unpublished). Because the Court must, at this early stage of the proceedings, view the Amended Complaint in the light most favorable to the Plaintiff, her somewhat conclusory assertion that she has been denied meaningful access to the grievance procedure is sufficient to survive dismissal.

The exhaustion required by 42 U.S.C. § 1997e(a) is not jurisdictional, but rather, an element of the claim that the Plaintiff must plead and prove. *Steele*, 355 F.3d at 1208-09. Thus, the issue is one that is well-suited for reconsideration at the summary judgment stage, where the parties can present a more complete factual record regarding the Plaintiff's attempts to exhaust. The Plaintiff is advised, however, that a mere conclusory assertion that she was denied access to the grievance procedure will not be sufficient to survive summary judgment. In order to carry her burden of showing that the grievance process was not available to her, the Plaintiff must come forward with competent evidence that describes, with specificity, the requirements of the grievance procedure; the nature of the grievances she was permitted to file; the manner in which

she sought additional access to the grievance procedure and the precise form in which that access was denied; and the steps she took to address such denials. Should the Plaintiff fail to come forward with a specific showing in response to a motion for summary judgment, the Court may find that she has failed to demonstrate an issue of fact with regard to her burden to establish exhaustion and grant summary judgment to the Defendants.

### C. Qualified immunity

Because the qualified immunity analysis subsumes the Defendants' arguments that the Plaintiff fails to state a claim, the Court will address the immunity issue next.

Government officials are entitled to qualified immunity from liability for civil damages under § 1983 when their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). A qualified immunity defense is analyzed under a two-step[2] process: first, the Plaintiff must establish that, upon a favorable review of the record, the Defendants' actions violated a constitutional or statutory right; second, the Court must inquire whether the Plaintiff can show that the contours of that right were

---

[2] In cases where qualified immunity is asserted in a motion for summary judgment, there is a third step. If the plaintiff meets her two burdens under the standard analysis, the burden then shifts to the defendants to show that there are no genuine issues of material fact on the substantive claim, and that they are entitled to judgment as a matter of law. *Smith,* 339 F.3d at 1212, *citing Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir.2001). Because there is no evidentiary record before the Court in the present case, this step is unnecessary.

"clearly established" at the time of the charged conduct.[3]  *Smith v. Cochran*, 339 F.3d 1205,

1211-12 (10th Cir. 2003), *citing Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1185

(10th Cir.2001).

Turning to the issue of whether the Plaintiff has adequately alleged a constitutional

violation, the Court starts with the claims against Defendants Knight and Dinet.  The Magistrate

Judge construed these claims to allege an Eighth Amendment violation.  In that context, the

Amended Complaint alleges that Defendant Knight filled out forms incorrectly during a transfer

of the Plaintiff to another housing unit, and that as a result, some of the Plaintiff's property,

including unspecified "medical supplies," were confiscated instead of following the Plaintiff to

her new housing assignment.[4]  The claim against Defendant Dinet alleges that during a shakedown

---

[3]The "clearly established" prong of the analysis is often described as inquiring whether a "reasonable official would understand" that his or her behavior violated the constitution.  *See e.g. Smith*, 339 F.3d at 1215.  In this Court's view, this description of the test has resulted in imprecise analysis, as it suggests that the focus of the analysis is on the official's subjective or objective state of mind.  This is incorrect.  The "clearly established" prong does not actually examine state of mind; rather, it merely inquires whether, at the time of the challenged act, there was binding legal authority recognizing the existence of a constitutional right in the particular circumstances.  *See e.g. Hope v. Pelzer*, 536 U.S. 730, 739 (2002) ("This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.") (citation omitted); *Smith*, 339 F.3d at 1215 (" A plaintiff may meet the burden of making this showing by pointing to a Supreme Court or Tenth Circuit opinion on point, or that his or her proposition is supported by the weight of authority from other courts.") (internal quotes omitted).

[4]Although the Amended Complaint is not entirely clear, it would appear that this incident occurred on either February 6 or 7, 2004.  It is possible that the "medical supplies" in the claim against Defendant Knight are, in fact, the ice bag seized by Defendant Dinet on February 6, 2004.

on February 6, 2004, Defendant Dinet confiscated the Plaintiff's medically-approved ice bag.

To state a claim for deprivation of rights secured by the Eighth Amendment, the Plaintiff must allege circumstances showing a "deliberate indifference" to her medical needs. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). To do so, the inmate must allege that: (i) her medical needs were serious, and (ii) prison officials were deliberately indifferent to those needs. *Riddle v. Mondragon*, 83 F.3d 1197, 1203 (10th Cir.1996). In addition, in cases such as this one where the Plaintiff's treatment was delayed, rather than denied outright, the inmate must also show that she has suffered "substantial harm" as a result of the delay. *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir.2001). A medical need is serious if it has been diagnosed by a physician as requiring treatment or is so obvious that a layperson could recognize the need for a doctor's attention. *Riddle*, 83 F.3d at 1202. To show "deliberate indifference" to her needs, the Plaintiff must demonstrate each Defendant was aware of a substantial risk of serious harm resulting from their conduct, yet chose to ignore it. *Farmer*, 511 U.S. at 835; *Garrett*, 254 F.3d at 949 (defendant must be aware of facts giving rise to an inference of substantial risk of harm and must actually draw that inference). The inadvertent or even negligent failure to provide appropriate care does not arise to an Eighth Amendment violation. *Riddle*, 83 F.3d at 1203.

The Plaintiff has adequately alleged that she had serious medical needs, insofar as the Amended Complaint alleges that her medical supplies had been approved by the medical staff at the facility. Because a physician apparently directed the treatment the Plaintiff was receiving,

the Court concludes that the Plaintiff has alleged the existence of a serious medical need.  Next,

she must allege that the Defendants were aware of a risk of harm that would result from their

conduct, and that they chose to ignore it.

In the claim against Defendant Knight, the Court finds no such allegation.  The crux of the

Plaintiff's claim against Defendant Knight is that he did not properly itemize and document the

Plaintiff's property while effectuating her transfer to another housing unit.  Even reading the

Amended Complaint broadly, the Court cannot draw any inference from the Plaintiff's allegations

that Defendant Knight knew that he was depriving the Plaintiff of her medical supplies.  Indeed,

the Amended Complaint alleges that Defendant Knight did not perform an inventory of her

property before he allowed it to be taken away.  This would suggest that Defendant Knight did

not even identify the property as being of a medical nature.  At best, the Plaintiff's claim alleges

that Defendant Knight was negligent in carrying out his administrative duty to account for her

property.  As stated above, negligence is not actionable under the Eighth Amendment even when

such negligence is directly related to the medical care provided.  Accordingly, the Plaintiff has

failed to state a constitutional claim against Defendant Knight, and his motion to dismiss is

granted.

The claim against Defendant Dinet is slightly different.  The Plaintiff alleges that

Defendant Dinet seized the ice bag after accusing the Plaintiff of using it for refrigeration, not

medical use.[5]   Viewing the Amended Complaint in the light most favorable to the Plaintiff– as

the Court must for both a motion under Fed. R. Civ. P. 12(b)(6) or a claim of qualified immunity,

*Smith*, 339 F.3d at 1211 (court must give "favorable review" to the allegations in the complaint

when assessing qualified immunity)-- the Court concludes that the Plaintiff could allege that

Defendant Dinet knew that the Plaintiff possessed the ice bag for medical purposes, particularly

since possession of ice for refrigeration purposes appears to be prohibited.  Once Defendant

Dinet is assumed to have known that she was confiscating a medically-approved item, it is logical

to infer that she did so with knowledge that such a confiscation would deprive the Plaintiff of the

medical benefits of the ice bag, and that she did so despite being aware that such a denial could

harm the Plaintiff.  Under the deferential standard used for non-evidentiary motions to dismiss,

this is sufficient for the Plaintiff to state a cognizable Eighth Amendment claim against Defendant

Dinet.

　　　　Once the Plaintiff states a valid constitutional claim, the next step of the qualified

immunity analysis is to determine whether the constitutional right at issue was "clearly

established" at the time.  A right is "clearly established" where, in light of the particular facts of

the case, there is binding legal authority recognizing the existence of that constitutional right.

*Brosseau v. Hagen*, 125 S.Ct. 596, 599 (2004).  This Court need not conduct an expansive

---

[5]Given the Plaintiff's *pro se* status, the Court reads the entire record broadly in interpreting her Amended Complaint.  Although the ice bag incident is not described with great specificity in the Amended Complaint, the Plaintiff's Motion for Preliminary Injunction adds many relevant details which the Court will consider as part of the substantive claim.

review of authority to recognize that the Eighth Amendment long-ago established that a prison official's seizure of items necessary for a medically-approved treatment without regard for the inmate's health is prohibited. *See e.g. Andrews v. Hanks*, 50 Fed. Appx. 766, 769 (7th Cir. 2002) (unpublished) ("instead of replacing or repairing the brace, Ashba declared his wrist to be fine and, contrary to doctor's orders, confiscated the brace, leaving his wrist without support. . .This was enough to state a claim for deliberate indifference, and the district court should have allowed Andrews to proceed with this claim"); *Mitchell v. Alusi*, 872 F.2d 577, 580-81 (4th Cir. 1989) (finding that inmate stated a viable Eighth Amendment claim when prescribed medication was confiscated from her without medical review). Indeed, the Court views situations involving the confiscation of medically-prescribed equipment by non-medical personnel to so clearly establish a potential constitutional violation as to fall within that segment of cases described in *Brosseau* as being "an obvious case [for which] a body of relevant case law" is unnecessary. 125 S.Ct. at 599. Accordingly, the Plaintiff has alleged a constitutional violation of a clearly established right, and Defendant Dinet is not entitled to qualified immunity.

Finally, the Court turns to the claim against Defendant Wallace. The gist of this claim is that, at some unspecified point in time, Defendant Wallace began restricting the Plaintiff's access to the grievance procedure in retaliation for her pursuit of claims against other prison officials. The precise constitutional basis for this claim is somewhat unclear. Defendant Wallace's brief views it as a Procedural Due Process claim, insofar as the Plaintiff is assumed to allege she was

deprived of a liberty interest in access to the grievance procedure without notice and an

opportunity to be heard.  Defendant Wallace goes on to assert that the grievance process does

not give rise to a liberty interest subject to constitutional protection.  Although this statement is

arguably correct in so far as access to a grievance procedure is not a right protected by the Due

Process clause of the Fourteenth Amendment, *see e.g. Walker v. Mich. Dept. of Corrections*, 128

Fed. Appx. 441, 445 (6th Cir. 2005) (unpublished) (collecting cases), the Plaintiff's claim could

nevertheless survive insofar as the denial of access to the grievance procedure effectively denies

her access to the courts in violation of the First Amendment.   *See e.g. Purkey v. Green*, 28

Fed.Appx. 736, 745-46 (10th Cir. 2001) (unpublished)[6] ("Because a prisoner must first file a

grievance in order to ultimately gain access to courts to state a claim for relief under 42 U.S.C. §

1997e, then punishing him for actually filing grievances by placing him in disciplinary segregation

would state a claim for a both an access to courts and a First Amendment violation").  Contrary

to Defendant Wallace's statement in his brief, the Plaintiff has alleged that the denial of access to

the grievance procedure has actually deprived her of access to the Courts, both insofar as she

lacks the ability to grieve certain confiscations of property she needs to pursue lawsuits, and

insofar as Defendant Wallace himself has alleged that the Plaintiff cannot proceed in this case

_____

[6]Pursuant to 10th Cir. R. 36.3, the Court acknowledges that unpublished opinions from the 10th Circuit are not considered precedential.  Nevertheless, the Court cites *Purkey* pursuant to 10th Cir. R. 36.3(b), insofar as it contains a persuasive discussion of the issue of whether retaliatory denial of access to a prison grievance system constitutes a constitutional violation, and the issue does not appear to be the subject of published decisions by the 10th Circuit.  Pursuant to 10th Cir. R. 36.3(c), a copy of the *Purkey* decision is attached.

because she did not file a grievance as required by 42 U.S.C. § 1997e(a). Accordingly, the Court finds that the Plaintiff has sufficiently alleged a constitutional violation under the First Amendment.

The Court also finds that at the time of the Amended Complaint, the right of inmates to be free from interference with their right of access to the courts through retaliatory interference with the grievance procedure was clearly established. Although *Purkey* is not precedential in this circuit, it cites cases such as *Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir.1989) (holding that retaliation for filing lawsuits and administrative grievances "violates both the inmate's right of access to the courts and the inmate's First Amendment rights") and *Valandingham v. Bojorquez,* 866 F.2d 1135, 1138 (9th Cir.1989) for that proposition. *See also Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir.1990). Accordingly, Defendant Wallace is not entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, Defendant Knight and Dinet's Motion to Dismiss **(# 30)** is **GRANTED IN PART**, insofar as all claims against Defendant Knight are **DISMISSED** for failure to state a claim, and **DENIED IN PART**, insofar as the Plaintiff has alleged a sufficient claim against Defendant Dinet. Defendant Wallace's Motion to Dismiss **(# 32)** is **DENIED**. The caption of this case shall be amended to omit Defendant Knight as a Defendant.

Dated this 8th day of August, 2005

15

**BY THE COURT:**

Marcia S. Krieger
United States District Judge



28 Fed.Appx. 736
28 Fed.Appx. 736, 2001 DJCAR 4224
**(Cite as: 28 Fed.Appx. 736)**



**Briefs and Other Related Documents**

This case was not selected for publication in the Federal Reporter.

Please use FIND to look at the applicable circuit court rule before citing this opinion. Tenth Circuit Rule 36.3. (FIND CTA10 Rule 36.3.)

United States Court of Appeals,
Tenth Circuit.
Wesley I. PURKEY, Plaintiff-Appellant,
v.
Leroy GREEN, Sheriff of Wyandotte County,
Kansas; J.B. Hopkins, Administrator
of Wyandotte County Jail; Joni Mumma, Program
Director of Wyandotte County
Jail; D.R. Herring, Administrative Capacity of
Wyandotte County Jail; Patty
Jones, Administrative Capacity of Wyandotte County
Jail; John & Jane Doe,
Employees of Wyandotte County Jail; Michael
Daily, Wyandotte County Jail;
Adrian Barlow, Wyandotte County Jail; Carla
Harris; Charles Dunlay; (F NU)
Griffin; Michele Sese, Defendants-Appellees.
**No. 00-3218.**

Aug. 17, 2001.

Pretrial detainee brought § 1983 action against various jail and medical officials, alleging constitutional violations including deliberate indifference to his medical needs, excessive force, and retaliation. The United States District Court for the District of Kansas dismissed complaint, and detainee appealed. The Court of Appeals held that: (1) defendants' alleged interference with detainee's filing of legal action did not support claim of denial of access to the courts; (2) detainee stated claim for deliberate indifference to his serious medical needs; (3) detainee stated claim of cruel and unusual punishment; (4) detainee stated claim against guard who allegedly incited violence against him; (5) placement of detainee in segregation did not amount to improper retaliation; and (6) detainee was required to pay full filing fee.

Affirmed in part, reversed in part, and remanded.

Henry, Circuit Judge, concurred in part, dissented in part, and filed opinion.

Briscoe, Circuit Judge, concurred in part, dissented in part, and filed opinion.

West Headnotes

**[1] Federal Courts** ☜══776
170Bk776 Most Cited Cases
Dismissal under statute governing in forma pauperis proceedings or statute setting forth screening procedures for prisoners' civil rights actions for failure to state a claim is subject to de novo review. 28 U.S.C.A. §§ 1915(e)(2)(B)(ii), 1915A.

**[2] Prisons** ☜══4(12)
310k4(12) Most Cited Cases

**[2] Prisons** ☜══4(13)
310k4(13) Most Cited Cases
Jail officials' alleged acts of tearing up initial copy of pretrial detainee's legal complaint and supporting exhibits, refusing to provide him with tape to mend torn items, refusing to photocopy legal documents, refusing to allow him to purchase large manila envelopes for mailing his complaints to the courts, and delaying or denying him access to legal research materials did not support claim of unconstitutional denial of access to the courts, because detainee was still able to pursue his civil rights claims by filing three separate complaints in district court and an appellate

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

28 Fed.Appx. 736
28 Fed.Appx. 736, 2001 DJCAR 4224
**(Cite as: 28 Fed.Appx. 736)**

brief in the Court of Appeals; at worst, officials' misconduct temporarily, but not fatally, delayed, and did not unreasonably hinder, the filing of detainee's claims.

**[3] Sentencing and Punishment** ⚖️➔1546
350Hk1546 Most Cited Cases
To state a cognizable Eighth Amendment claim for failure to provide medical care, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs; the deliberate indifference requirement has two components, namely, an objective component requiring that the pain or deprivation be sufficiently serious, and a subjective component requiring that the offending officials act with a sufficiently culpable state of mind. U.S.C.A. Const.Amend. 8.

**[4] Sentencing and Punishment** ⚖️➔1546
350Hk1546 Most Cited Cases
A medical need is sufficiently serious to support an Eighth Amendment claim of deliberate indifference to serious medical needs if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. U.S.C.A. Const.Amend. 8.

**[5] Constitutional Law** ⚖️➔262
92k262 Most Cited Cases

**[5] Prisons** ⚖️➔17(2)
310k17(2) Most Cited Cases

**[5] Sentencing and Punishment** ⚖️➔1546
350Hk1546 Most Cited Cases
Alleged actions of one or more jail nurses of intentionally refusing to comply with doctor's orders for treating pretrial detainee for infected blisters on his feet supported detainee's § 1983 claim of deliberate indifference to his serious medical needs, in violation of his substantive due process rights, since claim amounted to more than a mere difference of opinion as to appropriate course of treatment. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

**[6] Constitutional Law** ⚖️➔262
92k262 Most Cited Cases

**[6] Prisons** ⚖️➔17(2)
310k17(2) Most Cited Cases

**[6] Sentencing and Punishment** ⚖️➔1546
350Hk1546 Most Cited Cases
Doctor's alleged refusal to examine pretrial detainee's alleged "pinched nerve" neck injury and discontinuance of medication prescribed by another doctor for that injury, such that detainee continued to suffer persistent pain, supported
detainee's § 1983 claim of deliberate indifference to his serious medical needs, in violation of his substantive due process rights, since claim amounted to more than a mere difference of opinion as to appropriate course of treatment. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

**[7] Constitutional Law** ⚖️➔262
92k262 Most Cited Cases
Deliberate indifference to a pretrial detainee's serious medical needs, in violation of detainee's substantive due process rights, may include intentionally interfering with treatment or medication that has been prescribed by a physician. U.S.C.A. Const.Amend. 14.

**[8] Constitutional Law** ⚖️➔262
92k262 Most Cited Cases

**[8] Prisons** ⚖️➔17(2)
310k17(2) Most Cited Cases

**[8] Sentencing and Punishment** ⚖️➔1546
350Hk1546 Most Cited Cases
Doctor's alleged mistreatment of pretrial detainee, consisting of refusal to biopsy a tumor on detainee's shoulder and refusal to order a prompt ear irrigation, did not amount to deliberate indifference to detainee's serious medical needs, in violation of his substantive due process rights; although detainee disagreed with doctor's diagnoses and treatment, allegations did not show that doctor unnecessarily and wantonly inflicted pain on detainee, but, at most, showed mere

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

28 Fed.Appx. 736
28 Fed.Appx. 736, 2001 DJCAR 4224
**(Cite as: 28 Fed.Appx. 736)**

negligence. U.S.C.A. Const.Amend. 14.

**[9] Sentencing and Punishment** ⬤—1548
350Hk1548 Most Cited Cases
A prisoner alleging excessive force under the Eighth Amendment must state facts indicating that the prison official's use of force was objectively unreasonable and that the official's intent was for the purpose of causing harm. U.S.C.A. Const.Amend. 8.

**[10] Sentencing and Punishment** ⬤—1548
350Hk1548 Most Cited Cases
A prisoner alleging excessive force need not present facts of significant injury if he also presents facts showing that the official maliciously and sadistically used force to cause harm; however, de minimis uses of physical force not of a sort repugnant to the conscience of mankind are not actionable under the Eighth Amendment. U.S.C.A. Const.Amend. 8.

**[11] Constitutional Law** ⬤—262
92k262 Most Cited Cases

**[11] Prisons** ⬤—13(4)
310k13(4) Most Cited Cases

**[11] Sentencing and Punishment** ⬤—1548
350Hk1548 Most Cited Cases
Jail guard's alleged act of throwing full carton of milk at pretrial detainee, striking detainee in the neck, supported detainee's § 1983 claim of cruel and unusual punishment, in violation of detainee's substantive due process rights, because, even if medical personnel found no red marks on detainee's neck, guard's alleged "attack" on detainee was unprovoked and unnecessary, giving rise to an inference that it was maliciously and sadistically intended to cause harm, and detainee allegedly experienced sharp pain, for which medication was prescribed. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

**[12] Sentencing and Punishment** ⬤—1554
350Hk1554 Most Cited Cases
When a prisoner has been singled out for intentional punishment, he does not have to allege permanent or

significant injury to establish a claim of cruel and unusual punishment; the ultimate constitutional inquiry is whether an unnecessary and wanton infliction of pain has occurred. U.S.C.A. Const.Amend. 8.

**[13] Constitutional Law** ⬤—262
92k262 Most Cited Cases

**[13] Prisons** ⬤—17(4)
310k17(4) Most Cited Cases
Jail guard's alleged act of telling other inmates that pretrial detainee was trying to cause problems, resulting in confrontation between inmates and detainee, supported detainee's claim against guard for inciting violence
against him, in violation of detainee's substantive due process rights, even though other officials ultimately took steps to protect detainee from violence by other inmates. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

**[14] Prisons** ⬤—17(4)
310k17(4) Most Cited Cases

**[14] Sentencing and Punishment** ⬤—1537
350Hk1537 Most Cited Cases
A prisoner states an Eighth Amendment violation by alleging that a prison official intended to cause him serious harm by inciting other inmates to do violence against him; while an idle threat of impending physical harm that is not carried out will not suffice to state an Eighth Amendment claim, an imminent threat of serious harm, even though injury never actually occurs, will suffice. U.S.C.A. Const.Amend. 8.

**[15] Prisons** ⬤—13(5)
310k13(5) Most Cited Cases
Placement of pretrial detainee in disciplinary segregation following confrontation with other inmates did not amount to unlawful retaliation for filing of grievance, absent showing that filing of grievance was "but for" cause of his segregation; it was necessary to remove detainee from the dangerous condition in which other inmates were threatening to beat him, and it was not unreasonable per se to place detainee, instead of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

28 Fed.Appx. 736
28 Fed.Appx. 736, 2001 DJCAR 4224
**(Cite as: 28 Fed.Appx. 736)**

other inmates, in segregation.

**[16] Civil Rights ☜—1092**

78k1092 Most Cited Cases
(Formerly 78k135)
The existence of an improper motive for disciplining a prisoner which results in interference with a constitutional right may give rise to a cause of action under § 1983. 42 U.S.C.A. § 1983.

**[17] Constitutional Law ☜—91**

92k91 Most Cited Cases

**[17] Constitutional Law ☜—328**

92k328 Most Cited Cases

**[17] Prisons ☜—4(10.1)**

310k4(10.1) Most Cited Cases

**[17] Prisons ☜—13(5)**

310k13(5) Most Cited Cases
Because a prisoner must first file a grievance in order to ultimately gain access to courts to state a claim for relief under statute governing prisoner suits, then punishing him for actually filing grievances by placing him in disciplinary segregation would state a claim for both denial of access to courts and a First Amendment violation. U.S.C.A. Const.Amend. 1; Civil Rights of Institutionalized Persons Act, § 7, 42 U.S.C.A. § 1997e.

**[18] Federal Civil Procedure ☜—2734**

170Ak2734 Most Cited Cases
Pretrial detainee proceeding in forma pauperis was required to pay full filing fee for civil rights action to the district court, even though court dismissed detainee's action as frivolous. 28 U.S.C.A. § 1915(b)(1).

   **\*739** Before HENRY, BRISCOE, and MURPHY, Circuit Judges.

ORDER AND JUDGMENT [FN*]

FN* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

   After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R.App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

   Plaintiff-appellant Wesley I. Purkey, appearing pro se and in forma pauperis, appeals from the district court's dismissal of his civil rights complaints [FN1] brought under 42 U.S.C. § 1983. On the same day the district court granted plaintiff's motion to proceed *in forma pauperis* under 28 U.S.C. § 1915(a), the court dismissed plaintiff's complaint sua sponte, apparently pursuant to either § 1915(e)(2)(B)(ii) or 28 U.S.C. § 1915A(b)(1) (screening procedures for civil rights action in which prisoner seeks redress from governmental entity or its officers or employees). In dismissing the cause of action, the court held that plaintiff had failed to state a claim upon which relief may be granted. R. Doc.9 at 7. Our jurisdiction arises under 28 U.S.C. § 1291.

FN1. Plaintiff filed three complaints, with the second two supplementing the first complaint.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

28 Fed.Appx. 736
28 Fed.Appx. 736, 2001 DJCAR 4224
**(Cite as: 28 Fed.Appx. 736)**

*See* R. Doc. 1, 4, 5. The first was filed November 9, 1999, the second on December 22, 1999, and the third on January 24, 2000.

Mr. Purkey raises fifteen issues in a distended brief that is difficult to follow. Mindful of our obligation to construe his pleadings liberally, we have regrouped the **\*740** claims into (A) two claims alleging denial of access to courts, (B) three claims alleging deliberate indifference to serious medical needs in violation of the Eighth Amendment, (C) an Eighth Amendment excessive force claim, (D) an Eighth Amendment inciting to violence claim, (E) a claim for unconstitutional retaliation by segregation, (F) a claim for retaliation for exercise of First Amendment rights, and (G) a claim that the court erred in requiring payment of partial filing fees.

Because under our standard of review, we must accept Mr. Purkey's well-pleaded facts as true, we conclude that the district court prematurely dismissed certain of plaintiff's claims. We therefore remand two of Mr. Purkey's claims that prison officials were deliberately indifferent to serious medical needs; his Eighth Amendment excessive force claim; and his incitement to violence claim. On remand the court should also consider the First Amendment retaliation claims, addressing all the alleged deprivations. We affirm the district court as to Mr. Purkey's claims that his right to access to courts was unconstitutionally violated; one of the Eighth Amendment claims alleging deliberate indifference to medical needs; and his claim regarding retaliatory segregation. We also reject his claim of error regarding the payment of fees.

### I. Standard of review

[1] A dismissal under § 1915(e)(2)(B)(ii) or § 1915A for failure to state a claim is subject to de novo review. *Perkins v. Kan. Dep't of Corr.,* 165 F.3d 803, 806 (10th Cir.1999) (applying de novo review to dismissals under § 1915(e)); *Sanders v. Sheahan,* 198 F.3d 626, 626 (7th Cir.1999) (noting the same standard of review for dismissal under § 1915A); *McGore v. Wrigglesworth,* 114 F.3d 601, 604 (6th Cir.1997) (determining that dismissals under either section

should be reviewed de novo).

Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend. In determining whether dismissal is proper, we must accept the allegations of the complaint as true, and we must construe those allegations, and any reasonable inferences that might be drawn from them, in the light most favorable to the plaintiff.
*Perkins,* 165 F.3d at 806 (citation omitted).

### II. The complaint

Plaintiff was incarcerated as a pre-trial detainee at Wyandotte County Jail at the time the alleged incidents occurred. In his complaint, plaintiff alleges that in December 1998 defendant guard Davis threw a full carton of milk thirty feet across a "pod," striking plaintiff in the neck. The complaint states that the "act was unprovoked during breakfast," and that plaintiff later asked to be taken to the infirmary because he was suffering from "sharp/shooting pains and a burning sensation through the left side of [the] neck" and a "severe headache since being struck with the full carton of milk." R. Doc. 4 at 2, 7. He alleges that he reported to the nurse that his neck injury was caused by Davis. He further claims she would not let him see a doctor without paying a standard $5.00 fee and because she could see no red mark on his neck. Plaintiff states that he refused to pay the $5.00 fee and did not see the doctor that day. He alleges, however, that being struck by the milk carton caused a "pinched nerve" in his neck for which a doctor at a state hospital (where he was temporarily transferred for a psychiatric evaluation) later prescribed an analgesic. He claims that, without examining **\*741** his "pinched nerve," defendant Dr. Gamble at Wyandotte discontinued the medication despite his remonstrations that he suffered without it.

The complaint further alleges that the day following the milk-carton incident, defendant Davis told four or five African-American inmates that plaintiff was trying to cause problems for him because he had hit plaintiff with the milk carton. The inmates purportedly replied that if Davis would let plaintiff out of his "room", they

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

28 Fed.Appx. 736
28 Fed.Appx. 736, 2001 DJCAR 4224
**(Cite as: 28 Fed.Appx. 736)**

would "deal with" it. *Id.* at 7. Plaintiff alleges that the following night, the same inmates confronted him before "lockdown" in the presence of a sheriff's deputy, threatening his life, and an "assaultive confrontation" began to develop. *Id.* He alleges that the next day he was locked in disciplinary segregation for six weeks as punishment for reporting the incident, and he was later transferred to another pod.

Plaintiff alleged that defendants "systematically and continuously denied me access to meaningful legal research material in reprisal for litigation plaintiff was preparing for filing in the U.S. District Court in redress of claimed-alleged violations." R. Doc. 1 at 6. He submitted a copy of a grievance challenging an alleged change in policy for allowing inmates access to legal materials. *Id.* Ex. AB(1). He alleged that defendants informed him that "his legal research rights have been terminated." *Id.* at 9. He also alleged that defendants (1) threatened disciplinary action if he persisted in requesting law books, (2) tore up his civil rights complaint and copies of grievances showing that he has exhausted administrative remedies, (3) denied him access to tape so that he could tape the documents back together, and (4) refused to photocopy his complaints or (5) to provide him with a copy of the prison's new policies and procedures for obtaining copies, thus denying him access to the courts. *See* R. Doc. 4 at 17. Plaintiff provided affidavits from other prisoners supporting his claim that defendants had torn up his complaint and supporting documents. He sued the various defendants in their official and individual capacities.

### III. Discussion

The district court did not order a *Martinez* report. *See Martinez v. Aaron,* 570 F.2d 317, 319-20 (10th Cir.1978) (approving order requiring prison officials to investigate facts surrounding inmate's civil rights suit in order to construct an administrative record from which court may decide jurisdictional issues and make determination of frivolity under § 1915). We address each claim in the same order as the district court addressed those claims. [FN2]

FN2. Because plaintiff was a pre-trial detainee at the time of the alleged incidents, his claims technically are for violation of his substantive due process rights under the Fourteenth Amendment. *Lopez v. LeMaster,* 172 F.3d 756, 759 n. 2 (10th Cir.1999). "In determining whether [a pretrial detainee's] rights were violated, however, we apply an analysis identical to that applied in Eighth Amendment cases brought pursuant to § 1983." *Id.*

A. Denial of access to courts claims.

[2] Plaintiff alleges that defendants unconstitutionally denied him access to the courts by, among other things, tearing up the initial copy of his complaint and the supporting exhibits, refusing to provide him with tape to mend the torn items, refusing to photocopy legal documents, refusing to allow him to purchase large manila envelopes for mailing his complaints to the courts, and delaying or denying him access to legal research materials. The district court dismissed these claims pursuant to *Lewis v. Casey,* 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), concluding that plaintiff's allegations demonstrated "**\*742** inconvenience but not actual injury." R. Doc. 9 at 3.

In *Lewis,* the Supreme Court held that, to succeed on a claim of denial of access to the courts by restricting access to legal materials, an inmate must establish "actual injury," i.e., that "his efforts to pursue a legal claim" were "hindered" by the defendants' misconduct. 518 U.S. at 351, 116 S.Ct. 2174. Notably, the Court offered two examples of when an inmate's efforts to pursue a legal claim would be "hindered." First, the Court noted that an inmate "might show ... that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known." *Id.* at 351, 116 S.Ct. 2174. Second, the Court noted that an inmate might show "that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

28 Fed.Appx. 736
28 Fed.Appx. 736, 2001 DJCAR 4224
(Cite as: 28 Fed.Appx. 736)

even to file a complaint." *Id.*

Applying *Lewis* to the facts alleged by plaintiff, we agree with the district court that plaintiff failed to state a claim for denial of access to the courts. It is apparent that, notwithstanding the defendants' alleged misconduct, plaintiff was able to pursue his civil rights claims by filing three separate complaints in district court and an appellate brief in this court. At worst, defendants' misconduct temporarily, but not fatally, delayed, and did not unreasonably hinder, the filing of those claims. [FN3]

> FN3. As discussed below, however, many of these same allegations support plaintiff's valid First Amendment retaliation claim.

B. Claims of deliberate indifference to serious medical needs

Plaintiff's complaints allege three separate incidents in which he claims constitutional violations for failure to address his medical needs. In his first claim, he alleges that he was given tennis shoes (which he later described as "orthopedic" shoes) to wear at a state hospital facility that were taken away from him upon his return to Wyandotte. Defendant Dr. Gamble then ordered that his shoes be returned at Wyandotte after plaintiff allegedly suffered multiple infected blisters on his feet caused by the shoes issued by the jail. R. Doc. 1 at 4. He claims the nurses at Wyandotte refused to comply with Dr. Gamble's order and also refused to give him bandages or treatment ordered by Dr. Gamble for the infected blisters. *Id.*

In his second claim, he alleges that Dr. Gamble showed deliberate indifference to serious medical needs when he (1) refused to comply with recommendations made by a physician (or physicians) at the state hospital to biopsy a tumor on plaintiff's shoulder, (2) refused to examine plaintiff's alleged "pinched nerve" neck injury, and (3) discontinued the Feldene [FN4] prescribed for plaintiff's alleged shoulder and neck problems. R. Doc. 4 at 14- 15. Plaintiff avers that he continues to "suffer persistent pain in both shoulders

and neck due to his medication being discontinued." *Id.* at 15.

> FN4. We take judicial notice that Feldene is a medication with anti-inflammatory and analgesic properties. PHYSICIANS' DESK REFERENCE 2383 (53d ed.1999).

In his third claim, he alleges that in December 1999 a nurse at Wyandotte apparently prescribed ear drops to soften wax buildup in his ears and scheduled him to have an ear irrigation five days later. He states that at the time the ear irrigation was scheduled, defendant Dr. Gamble examined his ears and throat, prescribed medication, and then stated there was no need to do the irrigation and left the room. **\*743** Plaintiff states that he insisted that he needed the irrigation because his ears were "totally clogged, constant pressure and headache." R. Doc. 5 at 8. When he became adamant and refused to leave the examining room, he was issued a disciplinary "ticket" and returned to his pod. The complaint states that Dr. Gamble later denied telling staff not to perform the irrigation and that the irrigation was ultimately performed almost a month later. He claims that during this time he suffered pain when swallowing. *Id.* at 12.

The district court did not address these three claims individually, noting that it was apparent that plaintiff had access to medical care during the period of incarceration at Wyandotte. R. Doc. 9 at 4. The court stated that "no claim of constitutional dimension is stated where a prisoner challenges only matters of medical judgment or otherwise expresses a mere difference of opinion concerning the appropriate course of treatment," and concluded that the claims "present no more than a difference of opinion." *Id.* at 3-4.

[3] To state a cognizable Eighth Amendment claim for failure to provide medical care, " 'a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.' " *Olson v. Stotts,* 9 F.3d 1475, 1477 (10th Cir.1993) (emphasis omitted) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

28 Fed.Appx. 736
28 Fed.Appx. 736, 2001 DJCAR 4224
**(Cite as: 28 Fed.Appx. 736)**

The deliberate indifference requirement has two components: (1) an objective component requiring that the pain or deprivation be sufficiently serious, and (2) a subjective component requiring that the offending officials act with a sufficiently culpable state of mind. *Perkins,* 165 F.3d at 809 (citing *Wilson v. Seiter,* 501 U.S. 294, 298-99, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)).

[4][5] "A medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.' " *Sealock v. Colorado,* 218 F.3d 1205, 1209 (10th Cir.2000) (quoting *Hunt v. Uphoff,* 199 F.3d 1220, 1224 (10th Cir.1999)). Contrary to the district court, we conclude that plaintiff's first claim amounts to more than a "difference of opinion" and is therefore cognizable under the Eighth Amendment. Liberally construing plaintiff's pleadings, he alleges that one or more nurses at Wyandotte intentionally refused to comply with Dr. Gamble's orders for treatment of infected blisters on his feet, and that, as a result, he experienced pain and suffering. These allegations, if true, would clearly demonstrate more than an "inadvertent failure to provide adequate medical care." *Estelle,* 429 U.S. at 105, 97 S.Ct. 285. They would, instead, establish deliberate indifference to plaintiff's serious medical needs.

[6][7] Although a *Martinez* report might quickly reveal that Dr. Gamble did consider the pinched nerve complaint, on this record we have only the plaintiff's allegations of complete failure to examine to go by. Deliberate indifference may include intentionally interfering with treatment or medication that has been prescribed by a physician. *See Estelle,* 429 U.S. 97 at 104-05, 97 S.Ct. 285, 50 L.Ed.2d 251. Thus, by alleging that Dr. Gamble refused to examine his "pinched nerve" neck injury and discontinued the Feldene prescribed by another doctor for that injury such that he continues to suffer persistent pain in those areas because the discontinuation of his medication, Mr. Purkey has stated a cause of action instead of alleging only a difference of opinion. We therefore

reverse the dismissal of these **\*744** two claims and remand to the district court for further proceedings.

[8] As for the rest of plaintiff's indifference to medical needs claims, we conclude they were properly dismissed. It is apparent from plaintiff's pleadings that he was examined by Dr. Gamble regarding the shoulder tumor, and on at least one separate occasion for his ear/throat problems. It is further apparent that, on both occasions, plaintiff disagreed with Dr. Gamble's diagnoses and treatment. We are not persuaded, however, that these allegations are sufficient to establish that Dr. Gamble unnecessarily and wantonly inflicted pain on plaintiff. Rather, the allegations demonstrate, at worst, negligent diagnoses on the part of Dr. Gamble. As we have repeatedly indicated, such allegations do not give rise to a constitutional violation. *See Perkins,* 165 F.3d at 810 ("A negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation.").

C. Cruel and unusual punishment.

[9][10] The district court construed the pleadings as asserting a claim against defendant Davis for cruel and unusual punishment based upon his allegedly having struck plaintiff in the neck with a thrown milk carton. A prisoner alleging excessive force must state facts indicating that the prison official's use of force was objectively unreasonable and that the official's intent was for the purpose of causing harm. *Hudson v. McMillian,* 503 U.S. 1, 6, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). One alleging excessive force need not present facts of significant injury if he also presents facts showing that the official "maliciously and sadistically use[d] force to cause harm." *Id.* at 9, 112 S.Ct. 995. Of course, "*de minimis* uses of physical force ... not of a sort repugnant to the conscience of mankind" are not actionable under the Eighth Amendment. *Id.* at 10, 112 S.Ct. 995 (quotations omitted). Thus, not "every malevolent touch by a prison guard" will give rise to a federal cause of action, but unnecessary blows causing bruises and swelling will, for example. *Id.* at 9-10, 112 S.Ct. 995.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

28 Fed.Appx. 736
28 Fed.Appx. 736, 2001 DJCAR 4224
**(Cite as: 28 Fed.Appx. 736)**

Citing *Hudson,* 503 U.S. at 5, 112 S.Ct. 995, and *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986), the district court dismissed this claim, apparently on a conclusion of *de minimis* injury as a matter of law. The court noted that "medical personnel found no markings or other signs of trauma when plaintiff was examined shortly afterward" and found "no reason to conclude this isolated event was a result of a 'wanton infliction of pain.' " R. Doc. 9 at 5.

[11][12] Our review of the complaint indicates that the district court failed to take the plaintiff's well-pleaded allegations as true or to construe them in the light most favorable to plaintiff. *See Perkins,* 165 F.3d at 806. Plaintiff alleges that guard Davis's "attack" on him was unprovoked and unnecessary, giving rise to an inference that it was maliciously and sadistically intended to cause harm. *See Hudson,* 503 U.S. at 9, 112 S.Ct. 995. Although the complaint stated that medical personnel found no red marks on plaintiff's neck, it also stated that plaintiff experienced sharp and burning pain through the left side of his neck and shoulder area and a severe headache, and that the injury resulted in a pinched nerve for which a physician later prescribed Feldene. When a prisoner has been singled out for intentional punishment, he does not have to allege permanent or significant injury; the ultimate constitutional inquiry is whether an unnecessary and wanton infliction of *pain* has occurred. *See id.* at 6-7, 112 S.Ct. 995.

**\*745** A *Martinez* report would shed more light on the incident and assist the court in discerning whether guard Davis intended to hit plaintiff or whether he accidently hit plaintiff while attempting to throw the milk carton to someone else, for example. At this stage of the proceedings, plaintiff has stated a cause of action against defendant Davis in his individual capacity for violation of his Fourteenth Amendment rights. We emphasize that, by arriving at that conclusion, we express no opinion on his ability to ultimately prevail on the merits or even on summary judgment.

D. The inciting violence claim.

[13] Plaintiff's pleadings allege that, the day following the milk-carton incident, defendant Davis incited four or five inmates to harm plaintiff for complaining about the incident. The pleadings further allege that these inmates actually confronted plaintiff and threatened to kill him. The district court concluded these allegations were subject to summary dismissal "[b]ecause the record reflect[ed] the plaintiff was placed in segregation and not injured by [the] other inmates." R. Doc. 9 at 7.

[14] A prisoner states an Eighth Amendment violation by alleging that a prison official intended to cause him serious harm by inciting other inmates to do violence against him. *Northington v. Jackson,* 973 F.2d 1518, 1525 (10th Cir.1992). While an "idle threat" of impending physical harm that is not carried out will not suffice to state an Eighth Amendment claim, an imminent threat of serious harm, even though injury never actually occurs, will suffice. *See id.* at 1524; *Ramos v. Lamm,* 639 F.2d 559, 572 (10th Cir.1980); *see also Benefield v. McDowall,* 241 F.3d 1267, 1269-70 (10th Cir.2001) (holding that an Eighth Amendment claim had been stated that survived a defense of qualified immunity when prisoner alleged he had been labeled a "snitch" by a correctional officer).

While the fact that other officials ultimately took steps to protect the plaintiff from violence by other inmates would bar a claim against them in their individual or official capacities for allowing unconstitutional prison conditions to continue, it would not shield guard Davis from liability for creating the serious condition that required that protection in the first place. Accepting plaintiff's allegations as true, plaintiff would be able to establish that guard Davis intended to seriously harm him by inciting inmates to beat him, thereby stating a violation of the Eighth Amendment. *See Northington,* 973 F.2d at 1525 & n. 4 (stating that such allegations may also support a substantive due process claim). The district court erred in dismissing plaintiff's claim against guard Davis in his individual capacity for inciting violence against plaintiff.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

28 Fed.Appx. 736
28 Fed.Appx. 736, 2001 DJCAR 4224
**(Cite as: 28 Fed.Appx. 736)**

E. Segregation/retaliation for filing internal grievances.

[15] Plaintiff alleged that, after the inmate confrontation, prison officials placed him in disciplinary segregation.   R. Doc. 1 at 4, Doc. 4 at 8.   Although plaintiff alleged that his placement in segregation constituted retaliation for filing grievances, the district court dismissed the claim, holding that "changes to an inmate's housing status generally do not implicate a constitutional interest." *Id.* Doc. 9 at 6.

[16][17] "The existence of an improper motive for disciplining a prisoner which results in interference with a constitutional right" may give rise to a cause of action under § 1983.   *Smith v. Maschner,* 899 F.2d 940, 947 (10th Cir.1990).   Because a prisoner must first file a grievance in order to ultimately gain access to courts to state a claim for relief under 42 U.S.C. *746 § 1997e, then punishing him for actually filing grievances by placing him in disciplinary segregation would state a claim for a both an access to courts and a First Amendment violation.   *See id.* ("It is also one aspect of the First Amendment right to petition the government for redress of grievances.");   *Wildberger v. Bracknell,* 869 F.2d 1467, 1468 (11th Cir.1989) (holding that retaliation for filing lawsuits and administrative grievances "violates both the inmate's right of access to the courts and the inmate's First Amendment rights");   *Valandingham v. Bojorquez,* 866 F.2d 1135, 1138 (9th Cir.1989) (allegation that prison officials conspired to label prisoner a "snitch" in retaliation for petitioning prison and government for redress of grievances stated cognizable claim for violation of right of access to the courts).

However, because Mr. Purkey cannot show that filing a grievance was the "but for" cause of his segregation, *see Peterson v. Shanks,* 149 F.3d 1140, 1144 (10th Cir.1998), we affirm dismissal of this claim.   Certainly it was necessary to remove Mr. Purkey from the dangerous condition in which other inmates were threatening to beat him, and it was not unreasonable per se to place *him* in segregation instead of the four or five inmates who threatened him.   Therefore, we affirm the district court's dismissal of this cause of action,

albeit for a different reason.   *See United States v. Sandoval,* 29 F.3d 537, 542 n. 6 (10th Cir.1994) (noting that appellate court may affirm district court on any ground for which there is record sufficient to permit conclusion of law).

F. Claims of retaliation for filing suit against officers.

Plaintiff points out that the district court did not address his First Amendment claims that county jail officials retaliated against him for attempting to file suit against jail employees by (1) denying law library privileges, (2) threatening discipline if he persisted in obtaining legal materials, (3) tearing up his first complaint, (4) screening his subsequent civil rights action and placing copies of it in his jail file, (5) refusing to sell him large manila envelopes for mailing legal actions, (6) refusing to promptly provide accounting statements required for his in forma pauperis application, and (7) calling him out of his cell late at night and threatening him because he continued to pursue his claims against officials.   Of course, we are at a disadvantage without explicit findings to review. After reviewing the complaints, however, we conclude that plaintiff has stated a cause of action for First Amendment retaliation.   *See Penrod v. Zavaras,* 94 F.3d 1399, 1404 (10th Cir.1996) ("prison officials may not harass or retaliate against an inmate for exercising his right of access to the courts.").

G. Claim that court erred in requiring payment of filing fees after dismissal.

[18] Plaintiff asserts that the district court erred in concurrently ordering filing fees to be paid and dismissing his claims as frivolous. Section 1915(b) does not waive the filing fee, however, nor does it condition payment of the filing fee on success on the merits.   It states, "if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1).   Notwithstanding the district court's dismissal of plaintiff's action, he is still required to pay the full filing fee to the district court.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

28 Fed.Appx. 736
28 Fed.Appx. 736, 2001 DJCAR 4224
**(Cite as: 28 Fed.Appx. 736)**

H. Plaintiff's motion for order mandating return of legal materials.

On August 23, 2000, plaintiff filed a motion requesting this court direct the warden to provide him with his legal materials **\*747** that were allegedly confiscated when plaintiff was placed in administrative segregation on August 1, 2000. The record indicates that plaintiff was transferred to another correctional facility in September and we assume that he recovered those materials upon transfer, thus mooting the request. If that assumption is erroneous, plaintiff may petition the district court for relief. Plaintiff's motion is therefore denied.

The judgment of the United States District Court for the District of Kansas is AFFIRMED in part and REVERSED in part and REMANDED for further proceedings.

HENRY, Circuit Judge, concurring and dissenting.

I respectfully dissent from that portion of the order affirming the dismissal of Mr. Purkey's claim that his access to courts was unconstitutionally violated by the intentional destruction of his complaint and supporting documents. Destruction of legal documents by prison officials can present serious constitutional problems. *See Green v. Johnson,* 977 F.2d 1383, 1389-90 (10th Cir.1992). Tearing up an inmate's complaint and supporting documents asserting excessive force and allegedly unconstitutional conditions of confinement and refusing to photocopy complaints so that they can be properly filed clearly violates the mandate that prison officials not hinder an inmate's access to courts. *See Lewis,* 518 U.S. at 351, 116 S.Ct. 2174. The word "hinder" means "to hamper" or "to impede or delay the progress of," WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY at 583 (1988), and thus does not signify a conclusive impediment. It would appear that prison officials may unconstitutionally interfere with access to courts not only by fatally forestalling a required pleading, but also by unreasonably delaying a filing. *See Johnson v. Avery,* 393 U.S. 483, 485-86, 89 S.Ct. 747, 21

L.Ed.2d 718 (1969) ("access of prisoners to the courts ... may not be denied *or* obstructed") (emphasis added). Indeed, otherwise, officials could simply continue tearing up pleadings with impunity as long as conclusive deadlines still lay in the future. Mr. Purkey, however, did not simple delay, by stating that his original complaint and supporting documents were torn to pieces so that he could not file that complaint.

BRISCOE, Circuit Judge, concurring and dissenting.

I concur in part and dissent in part. Although I agree with the resolution of most of the claims at issue, I write separately to express my disagreement with the majority's decision to reverse and remand plaintiff's cruel and unusual punishment claim, and plaintiff's incitement to violence claim.

Cruel and unusual punishment

Plaintiff alleges he was subjected to cruel and unusual punishment when he was struck in the neck with a milk carton thrown by defendant Davis. Although the district court dismissed this claim on the grounds that it was an "isolated event" that resulted in "no markings or other signs of trauma when plaintiff was examined [by medical personnel] shortly afterward," R. Doc. 9 at 5, the majority reverses that ruling and remands for further proceedings. According to the majority, the fact that plaintiff did not suffer any "permanent or significant injury" is irrelevant. Maj. Op. at 744. Instead, the majority states, "the ultimate constitutional inquiry is whether an unnecessary and wanton infliction of pain has occurred." *Id.* The majority directs the district court on remand to obtain a *Martinez* report to "discern[ ] whether guard Davis intended to hit plaintiff or whether he accidently hit plaintiff while attempting to throw the milk carton to someone else." *Id.*

**\*748** In my view, it is unnecessary to decide whether defendant Davis intended to hit plaintiff with the milk carton. Even assuming that he did (and I certainly do not condone Davis' conduct if that is the case), I agree with the district court that it was, at most, a "de minimis" application of force that does not rise to the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

28 Fed.Appx. 736
28 Fed.Appx. 736, 2001 DJCAR 4224
**(Cite as: 28 Fed.Appx. 736)**

level of an Eighth Amendment violation. *See Hudson v. McMillian,* 503 U.S. 1, 9-10, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (emphasizing that the Eighth Amendment prohibition against cruel and unusual punishment "necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind' ") (citation and internal quotations omitted); *Northington v. Jackson,* 973 F.2d 1518, 1524 (10th Cir.1992) (same).

Incitement to violence

Plaintiff alleged that four inmates, at the urging of defendant Davis, confronted and threatened to kill him for complaining about the milk carton incident. The district court dismissed the claim "[b]ecause the record reflected the plaintiff was placed in segregation and not injured by [the] other inmates." R. Doc. 9 at 7. The majority, however, reverses and remands the claim for further proceedings. In doing so, the majority states that if plaintiff's allegations are true he "would be able to establish that ... Davis intended to seriously harm him by inciting inmates to beat him, thereby stating a violation of the Eighth Amendment." Maj. Op. at 16.

I disagree. First and foremost, I am not convinced that plaintiff's allegations, even if true, demonstrate that he was subjected to a "substantial risk of serious harm." *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). As the district court recognized, plaintiff's own pleadings allege that he was promptly placed into segregation after notifying prison officials about the incident and there is no indication he was thereafter subjected to threats of violence by the four inmates. Second, it is unclear to me what type of relief plaintiff would be entitled to even if he were allowed to proceed on the claim. Plaintiff is no longer housed at the Wyandotte County Jail and therefore has no legitimate claims for declaratory or injunctive relief. *See Green v. Branson,* 108 F.3d 1296, 1300 (10th Cir.1997) (concluding that a prisoner's transfer or release from a jail moots his claims for declaratory relief). Further, plaintiff has not alleged any physical injury resulting from the confrontation with the four inmates. In light of 42 U.S.C. § 1997e(e), that leaves

him with little more than a claim for nominal damages against defendant Davis. *See Searles v. Van Bebber,* 251 F.3d 869, 876, 878 (10th Cir.2001) (concluding that § 1997e(e) limits an inmate's ability to recover for mental or emotional injuries, but does not bar recovery of nominal damages).

28 Fed.Appx. 736, 2001 DJCAR 4224

### Briefs and Other Related Documents (Back to top)

• 00-3218 (Docket)

(Jul. 25, 2000)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.